Good morning, Mr. This is not a securities case and this is not the general fraud case that you usually see before the court. As the court knows, this is a computer breach case, which is different. And we submit that a reasonable method to calculate loss is needed involving companies required to give notice to customers when there's been a breach of the company's confidential computer files. Thereby leaving customers exposed to identity theft. Now, we simply argue that the method to calculate loss should be all costs to give notice to the customers of the breach and to tell them to be on the lookout for identity theft. And the probation office, I might note, agreed with us. The district court adopted a broader standard. We could call it the ought to do standard. Well, that's one way of looking at it backwards. But what the district court did was to find that it was in this case at least reasonably foreseeable that the bank would take steps to protect its customers in the face of a huge theft of identity and social security, including social security numbers. Your Honor, I would submit that that's kind of 2020 hindsight. We could say then that to have the bank given customers shamwows and toasters and other types of perks to keep them happy, that would be reasonably foreseeable too. All these things are a matter of degree though. And the type of things that we're talking about in this case were more or less directly related to the identity theft. In other words, it's not like giving them a toaster. You're giving them a monitoring service so they can check and see if somebody's used their name or their social security number. I think that the monitoring service also included credit checks to check their credit, to see how their credit was. It wasn't just solely confined to determining whether or not somebody took their identity and used it. And it was a very expensive service, as the court knows. It was in the millions of dollars. And so we would argue that those types of things should not be included in the loss calculation in the case. If the court agrees with us, then first of all, I would just submit that we who work in the district court don't see these cases very often. My guess is you're going to be seeing more of them though. We are. And we don't see these on a daily basis. And I think that everyone who works in the district court would appreciate some guidance from this court with respect to how far these reasonably foreseeable losses should extend. We contend that they should be confined to the losses that are attributable to giving notice to the customers. And that's it. So basically your argument in the brief is that it should be limited to essentially what's legally required under whatever the regulations are. Why would you cut it off there, though? Why is reasonably foreseeable limited to what's legally required? Well, those are policy issues that I really can't get into. I think that if the court were to hold that, in an opinion, that companies should be taking further steps, that notice is not sufficient. Losses in criminal cases, for example, will cover such things as hotlines, free credit service monitoring, et cetera, that that would set perhaps a precedent that companies would be looking at in causing losses. And that would cause extremely increased costs in these types of situations. There would be very unhappy customers of security breach cases wherein if their business, the company that they're doing business with, didn't do those types of things, they would be infuriated because in the Siddiqui case, the court held that hotlines, credit monitoring should be given to customers. I think it would set a bad precedent, in my opinion. No, I mean, the thing is it didn't hold that it should be. It held that it was reasonably foreseeable that it could potentially result from the offense that was committed. That's true, Your Honor, but I think everything we could argue, there could be an argument made that just about everything is reasonably foreseeable. Whenever an act occurs, Paul's graft versus, I can't remember the old law school terms, but it goes on and on and on. It's not as if the bank sent out 2 million teddy bears. I mean, maybe you could say that was going a little too far. But this was all related pretty directly to the theft of social security numbers and identity, isn't it? Well, if the court disagrees, obviously, with our position. Well, let me ask you a different question. Why haven't we, in effect, crossed the line that you're concerned about in FAN? FAN, I think, is a case which talks generally about the law should include the harm, the harm that is caused as a result of the fraud. In the FAN case, I don't think it's that helpful in a security breach case. It's not that helpful because in the FAN case, what you had is victims of the bank who suffered losses. Those actual damages, those costs to the victims should be the harm. It should be, they should have been paid. Sure. And the bank, the bank also got its costs, if I recall, for investigating, for investigating things and so forth, which is more than just, you know, getting notice. Correct. And the bank in FAN, that was part of the losses that were included as well, the harm to the bank. It's a matter of how far you want to take the losses that are caused to the bank, I guess, in fraud cases. In fact, there wasn't any evidence that there was any actual harm to any of the victims in this case, which really is what distinguishes it from FAN. Now, I'm wondering, too, whether or not there should be a, I mean, it's supposed to be objectively reasonably foreseeable. It seems to me that the employee, Rabollo, who breached the security and obtained this vast number, there might be a loss that this loss might be reasonably foreseeable when you steal, what, 2 million or however many identities, and then you're selling them in parcels to other people or then selling them in parcels to other people. I'm just wondering whether we didn't go too far in this case by saying what was reasonably foreseeable for someone who steals 2 million is reasonably foreseeable. You know, then you calculate a proportion of that, if that's the correct analysis to apply in this sort of a case. Well, in our particular case, we did that. We did that calculation, as the Court knows. Right. And I just don't understand what the legal basis is for doing that. The legal basis was that he was not involved, had nothing to do with the mass numbers of customers who were on the list. Right. That it was the mass numbers that was the reason that the bank, I think it's Countrywide, right, thought that all these additional precautions should be taken, that your client only was responsible for selling a much smaller number. Good point, Your Honor. I just didn't think of that as an argument or think of that as an issue, but I could see what the Court's getting at. Here's the little guy. He had really no idea what was going on with him. The big picture, yeah, he's accountable for the big picture. For all he knew, it could have been 5 million or it could have been, I don't know, some smaller portion of that. Correct. So why is it necessary to have the hotline, which seems redundant as the notice, and what else are they going to learn? Two years' protection when there's no evidence of any damage. I don't know. An argument I didn't think of. Well, okay. But I would agree with the Court. Here's the little guy, way down the chain. Rebolo certainly, if we're going to apply these reasonably foreseeable losses, perhaps to this little guy who down there got them third-hand and sold them, it might not have been reasonably foreseeable to somebody that farther lower down the chain. But I didn't raise that in my appellate brief, Your Honor. I know that. I've just been thinking about this issue because, as Judge Kennelly said, there's probably going to be a lot more cases like this. I didn't want to take too much time. The last two issues, Your Honor, the 5K issue, refusals to depart, as the Court knows, are now reviewable. And in the many years that I've been practicing in the district court, that was the first time that I saw a district court refuse, when both sides wanted a departure, refuse to give a departure. But a departure is just the functional equivalent of a variance under 3553A. So what difference does it make? Correct, Your Honor. But the Court used very specific language when it was making its computation. The Court will recall that the Court specifically said on the record that Guideline 5K, and I'm quoting, Guideline 5K is not a guideline property, and it is taking it into account along with the government's argument in determining a reasonable sentence. But I'm not departing four points for cooperation. I think that there was some confusion that was going on at the sentencing. It is a guideline computation. What perhaps the Court should have done, and I understand by reading all the briefs what probably the Court was thinking, give the guy the four points departure, but increase them on the other end for there being so many victims. But I think what should have been done was the Court should have arrived at a procedurally proper guideline score first, which is, I think, required by the cases. Figure out the guidelines first appropriately. Then if you want to vary upward or whatever it's called nowadays based on so many victims, do it and give reasons for it. But that wasn't done in this case. Thank you. Thank you, Mr. Reed. Thank you. Good morning. I may have pleased the Court. Byung Soo Kim for the United States. This case, as the Court knows, involved a massive security breach countrywide resulting in the compromise of over $2 million customer social security numbers and accounts. I say that, Your Honors, not in order to try to paint the defendant in a poor light, but rather to explain why the district court's inclusion of the costs of this call center and the free credit monitoring into determining an appropriate sentence for the defendant, not the restitution. That's not at issue. But in determining the sentence was perfectly reasonable and well-tailored to the magnitude of the security breach. The district court didn't at first. What's legally required of the bank in this circumstance? Your Honor, what's legally required is certainly what Mr. Reed emphasizes in his brief with respect to the notification requirements. Right. And that was done. And then at a certain cost. And those aren't in dispute. Right. Okay. So then what the district court did is I think perhaps from hindsight saying, well, the bank, so this is now being determined by the bank, not a court of law. The bank also thought it was important to have this hotline, which the probation officer found was redundant, and to have two years' protection of monitoring. And then it seems as though the district court said, well, if the bank thought it was necessary, then therefore it's reasonably foreseeable. Well, what if the bank made other sorts of business-type goodwill decisions following this big loss of identities? You know, I'm not credited enough or known enough about this industry to know what else they might think of, but maybe they would have, could, you know, print bulletins and send them out to customers on a regular basis, advising them of steps, precautions to take against identity. It just went on and on and on. Where is the line here? Your Honor, that's a good question. And to address the factual premise of the Court's question, I don't think even though it may not be spelled out in the record, that there were undoubtedly other costs that the bank incurred, perhaps hiring outside counsel in order to deal with this loss. And so the Court's question is where do you draw the line? Why not include those attorneys' fees as well as reasonable costs? Your Honor, I would submit that this case doesn't require the Court to set some kind of standard or set of guidelines that's going to imply in every single case. The district court, looking at the particular facts before it, the massive nature of the security breach, and the very well-tailored remedial measures taken by the bank, simply determined this was a reason, I'm going to include these costs as a reasonable way of determining culpability of the defendant, not restitution. Well, hang on a second. It's not whether the bank acted reasonably. It's whether it's reasonably foreseeable. And I know the district court made that finding, but what's the basis in the record for the notion that these extra things, the call center and the credit monitoring service, were reasonably foreseeable? Well, Your Honor, if I can just – I don't mean to quibble, but the defense in their brief at page 10 actually states that the standard is actually the reasonable cost of responding to the incident or to the offense, not necessarily reasonably  And they're using in adopting that standard – Well, that's what the guideline says, though. I mean, the guideline commentary says reasonably foreseeable. Correct. But our position would be that that's not an issue that this Court needs to reach on this appeal, that whether the standard is reasonable – I'll take your statement of it. What's the basis in the record for the determination that what the bank did was reasonable? I mean, is there any evidence? Was there any, like, victim impact letter submitted from the bank saying this is why we did this? Anything like that at all? Your Honor, the primary basis in the record is the pre-sentence report by the probation office, which doesn't say anything about this and actually goes the other way in terms of the recommendation. Well, I think that reading the recommendation letter in conjunction with the actual pre-sentence report, basically the probation office punted to the district court. I don't think that it's – Well, actually, in paragraph 35, the probation officer says it's not clear that the costs for the call center and credit monitoring are reasonably foreseeable. And it says, first, it's redundant. Second, they're valuable tools for the customers, but they're not really necessary to resolve the damage done, which goes to your respond to, not really necessary, especially when there wasn't any damage. Well, there are a couple issues there. And I don't mean to quibble with the Court. I think that's the language I was referring to when the probation office said it's not clear. So I think – what's the answer to Judge Kennelly's question? Okay. Going back to Judge Kennelly's question, Your Honor, the parties, there was no disagreement as to the specific nature of these additional remedial measures. That's right. Okay. And in terms of why that was reasonably foreseeable or, using the defendant's lower standard, frankly, why it was a reasonable cost of responding to the offense, I think that the district court basically engaged in the following reasoning, that given the massive nature of the security breach, it would have been irresponsible and could very well have likely subjected the bank to lawsuits and civil liability if it didn't do simply more than simply sending out the notices. Now – I mean, I think that's a good attempt to try to get at what district court might have been thinking, but we really don't see any of that in here anywhere. I mean, it would be nice – and it doesn't seem to me that it would be all that difficult from the standpoint of when you're doing these cases in the district court. Yes. You know, to have the bank write some sort of a victim impact letter saying, this is what we did, this is why we did it. And then there would be at least a basis in the record for it. Yes, Your Honor. What we do have, just to answer the court's question, is we have the district court engaging in this reasoning discussing the massive nature of the threat and how this was perfectly reasonable because from the victim's standpoint – from the victim's standpoint, the courts might keep in mind that this is a case in which, as Judge Wardlaw was pointing out, the defendant, Siddiqui, was a part of a much larger scheme in which there are many other intermediaries. And so if you can imagine what this case looks like when you, Your Honor, receives this notice in the mail indicating that your account's been compromised, well, you might have a lot of questions about how serious a threat this is. And so that's why the call number is there for you to call and find out more information about what Countrywide is doing, what has happened to your information. And what Countrywide might tell you in those circumstances is that, well, there are many other people here. We don't know whether your number was sold to other people in addition to Mr. Siddiqui. We don't know if Mr. Siddiqui sold your information to other people in addition to the undercover. And so I think that from a victim's standpoint, you're going to be very concerned. There may not, Judge Wardlaw, be any actual damage that you suffered or that the bank has suffered. But ---- I understand that. But when I read what the district court said, it said these are the costs. It sort of reasoned backwards to me. These are the costs that the bank incurred. And now I'm finding them reasonably foreseeable. Instead of doing an analysis of what would be reasonably foreseeable to this particular defendant who had, you know, bought, I don't remember how many he bought, but a small proportion of ---- 19,000. Yeah, IDs. And so isn't it ---- you're saying, no, we look at it entirely from the bank's perspective. But what the bank incurred isn't necessarily what was reasonably foreseeable at the time of the theft. I agree with that, Your Honor. I don't think we should look at it from the bank's perspective. I think the proper standpoint is from that of the defendant and what was reasonably foreseeable to a reasonable defendant. I would just point out two things because my time is ---- But did he know? Is there any evidence he knew that this was what he had and was dealing with was a part of this $2 million? Well, I would only return to the answer I was given before, that he knew he was part of a much larger scheme. He didn't know who his co-schemers were, what they were doing with information, and I think that that would have given him reasonable notice that he was engaged in a scheme that posed a serious threat to actual victims. I would just note, Your Honor, that on the government-sealed excerpts of record in the defendant's actual sentencing submission, in addition to the California legal requirements that he discusses, there's also an interagency guidance from the FDIC and the Department of Treasury, and that guidance at page 76 of the government-sealed excerpts of record at the top of that page actually talks about how in addition to providing notice, banks should provide a number that customers can call so they can ask questions. So I would submit that ---- What about two years of free credit monitoring? Well, the two years of free credit monitoring is not specifically called out, but you'll see that lower down on page 76, and then on also page 77, the interagency guidance says that the notice should tell customers that they should check their credit and that they should be vigilant from 12 to 24 months. And so that's precisely what the bank ---- But that's the onus on the customers, not the onus on the bank. Absolutely true. And that same report, you know, points out that people these days, because of that law they passed a few years ago, can get free credit reports, not off the commercial on the TV, but they can get real free ones. They can get free credit reports, and I see I'm out of time, but I just wanted to end by saying that the standard is what's reasonably foreseeable, not what's legally required. And I think that what this case ultimately is about is giving district courts the discretion to, based on the particular facts in front of them, craft sentences that address the defendant's true culpability, as it did in this case. Thank you very much. Thank you. Anything further? No. Anything further? Anything further? I don't have anything. No. All right. Thank you very much. The matter just already will be submitted.
judges: Kennelly, Rymer, Wardlaw